```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ANTHONY SHNAYDERMAN,                          :
                                              :
                         Plaintiff,           :
                                              :      22-CV-2279 (ALC)
         -against-                            :
                                              :      OPINION AND ORDER
PAYPAL, INC.,                                 :
                                              :
                         Defendant.           :
                                              :
-------------------------------------------------------------- x
```

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Anthony Shnayderman ("Plaintiff" or "Shnayderman brings this suit against PayPal Inc, ("Defendant" or "PayPal") alleging that Defendant wrongfully retained funds in Plaintiff's suspended PayPal account. PayPal now moves to compel arbitration of Plaintiff's claims. For the reasons that follow, Defendant's motion is **GRANTED**.

## BACKGROUND

### I.   Factual Background[1]

Plaintiff resides in New York City and runs a concierge and hospitality business. (Compl., ECF No. 1-2 ¶ 1.) PayPal is a business that provides "digital payment services that allows users to buy, sell and send money securely online." (Mangiameli Decl., ECF No. 4-2 ¶ 3.) PayPal is a Delaware corporation with its principal place of business in California. (Notice of Removal, ECF No. 1 ¶ 3.)

---

[1] The following factual background is drawn from the Complaint, the Notice of Removal, and the declarations and affidavits filed in support of and in opposition to the pending motion to compel arbitration.

A. <u>Plaintiff's Allegations</u>

Plaintiff alleges two causes of action for breach of contract, one claim of breach of the implied covenant of good faith and fair dealing, one claim of trespass to personal property, one claim of unjust enrichment, one claim of deceptive business practices in violation of General Business Law § 349, one claim of negligence, and declaratory judgment. (*See generally* Compl., ECF No. 1-2.)

Plaintiff opened an account with PayPal on February 17, 2017 "to send money and receive money for personal use." (Compl. ¶ 6; Mangiameli Decl., ECF No. 4-2 ¶ 10.) In 2018, PayPal "froze" Plaintiff's account—which had a balance of roughly $20,000—purportedly because Plaintiff was engaging in business transactions, rather than purely personal transactions. (*Id.* ¶ 7.) Plaintiff informed PayPal that he had a concierge business and provided PayPal with a W-9 Form. (*Id.*) PayPal subsequently reinstated Plaintiff's account and released his funds. (*Id.*)

On July 15, 2021, PayPal informed Plaintiff that his account—which at this time had a balance of roughly $130,000.00—had been "permanently limited". (*Id.* ¶ 8.) The email stated that Plaintiff's funds would be held for a period of 180 days "without any explanation other than stating that Plaintiff's funds may be used to satisfy obligations he may have under the User Agreement and Acceptable Policy." (*Id.*)

On September 2, 2021, after several emails from Plaintiff inquiring about the status of his funds and the reasons for the account limitation, Plaintiff received an email response from Plaintiff citing "a number of facts that when viewed together, indicated that there was a high level of risk associated with Mr. Shnayderman's Account." (*Id.* ¶¶ 8–9.) These risks allegedly included: (1) links to multiple accounts that were themselves limited and had unresolved negative balances; (2) that Plaintiff accepted payments for items that were prohibited under PayPal's Acceptable Use

Policy; (3) that Plaintiff accepted payments from accounts that had been limited for similar activity; and (4) that Plaintiff's business was unprofitable in November and December 2020. (*Id.* ¶ 10.)

On September 24, 2021, PayPal sent an email to Plaintiff stating that "[d]ue to the potential risk of charge backs and other forms of reversals, […] Mr. Shnayderman's remaining balance will be held for 180 days from the date the limitation was originally placed on his account. We will make any remaining funds, less reversals or debits, available to him for withdrawal on or before January 10, 2022." (*Id.* ¶ 11.) However, Plaintiff alleges that PayPal has still not returned these funds. (*Id.* ¶ 12.) On February 1, 2022, Plaintiff alleges that PayPal informed him that $89,922.91 had been debited from his account "as recovery for liquidated damages caused by Plaintiff's 'Acceptable Use Policy' (AUP) violations." (*Id.* ¶ 13.)

B. The User Agreement

Through the declaration of Legal Specialist Heather Mangiameli ("Mangiameli"), PayPal contends that in order to create an account, each user must accept the terms of the company's User Agreement. (Mangiameli Decl., ECF No. 4-2 ¶ 4.) The User Agreement sets forth a number of terms and conditions which govern the use of PayPal's services. (*Id.*) Attached to the declaration are (1) a copy of the User Agreement effective October 19, 2016 ("Exhibit A"), (2) a copy of the Acceptable Use Policy, updated September 21, 2021 ("Exhibit B") and (3) a copy of the User Agreement effective June 9, 2021 ("Exhibit C"). (*Id.*, Exs. A–C, ECF Nos. 4-3, 4-4, 4-5, 4-6.)

The declaration explains that before creating an account, a user must agree to the terms set forth in the User Agreement by checking a box indicating the user's acceptance of the terms. (*Id.* ¶ 5.) A user may click on the User Agreement in order to review its terms before agreeing to its terms and conditions. (*Id.*)

PayPal has provided a copy of the User Agreement that was in effect when Plaintiff opened his PayPal account in February 2017. (Mangiameli Decl., Ex. A, ECF No. 4-3.) The User Agreement went into effect on October 19, 2016, and includes an agreement that all legal disputes with PayPal would be resolved through arbitration:

> "You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate."

(*Id.* at 36.) The arbitration agreement further provides that the arbitration will be conducted by the American Arbitration Association and shall be held in the county in which the user resides or another mutually agreed location. (*Id.* at 36–37.) The agreement also allows a prospective PayPal customer to opt out of the arbitration provisions by mailing a written opt-out notice to PayPal's litigation department within 30 days of opening their account. (*Id.* at 37.) The opt-out notice is included in a hyperlink embedded in the User Agreement. (*Id.*) Additionally, the User Agreement effective June 9, 2021, operative when Plaintiff filed the Complaint, also contains a substantially similar arbitration provision. (*Id.*, Ex. C, ECF No. 4-5 at 61–68.)

PayPal's records indicate that Plaintiff's account was created on February 17, 2017. (Mangiameli Decl., ECF No. 4-2 ¶ 10.) PayPal maintains that in order to create this account, Plaintiff agreed to the terms in the User Agreement—including the arbitration provision—by checking the box indicating he had read and agreed to the User Agreement and by creating and using his account. (*Id.* ¶¶ 6, 10.) In the Complaint, Plaintiff also alleges that upon opening his

4

account, he "accepted the exhaustingly long and deceptive terms of the contract", although he does not specify which contract he agreed to in his Complaint. (Compl. ¶ 18.)

## II. Procedural History

Plaintiff commenced this action on February 22, 2022 in the Supreme Court for New York County. (Notice of Removal, ECF No. 1 ¶ 7.) Defendant removed the case to federal court on March 21, 2022 pursuant to 28 U.S.C. § 1332(a) based on the diversity of citizenship between Plaintiff and Defendant. (*See generally id.*)

Defendant also moved to compel arbitration of Plaintiff's claims on March 21, 2022. (Def.'s Mot., ECF No. 4.) Plaintiff filed its opposition to the motion on April 29, 2022, arguing that (1) the Mangiameli Declaration is legally insufficient; (2) and Plaintiff did not agree to the terms of the User Agreement. (Pl.'s Mem., ECF No. 10.) Defendant filed a reply in further support of its motion on May 13, 2022. (Reply, ECF No. 12.)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") governs arbitration agreements. *See* 9 U.S.C. § 2. There is "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and citations omitted); *see also Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." (internal quotation marks and citations omitted)).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The moving party must "mak[e] a *prima facie* initial

showing that an agreement to arbitrate existed," and if the movant satisfies its burden "by a showing of evidentiary facts," then the burden shifts to the non-movant to show the agreement is invalid or inapplicable. *Marcus v. Collins*, No. 16-CV-4221, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016) (internal quotation marks and citations omitted).

In reviewing a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). For this reason, "it is proper (and in fact necessary) to consider…extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-cv-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether parties formed a valid arbitration agreement…are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial."). "If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) (citing *Nunez v. Citibank*, N.A., No. 08–CV–5398 (BSJ), 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009)).

**DISCUSSION**

I.    **Plaintiff Has Agreed to Arbitrate His Claims**

Plaintiff argues Defendant has failed to establish that the parties entered into a binding agreement to arbitrate because the Mangiameli Declaration is legally deficient and because Defendant has not shown that there was mutual assent to the arbitration provision in the User Agreement. (*See generally* Pl.'s Mem., ECF No. 10.) Specifically, Plaintiff argues that the declaration is legally insufficient because Defendant has not established that the declaration is based upon the affiant's personal knowledge and that the declaration does not satisfy the requirements of Federal Rule of Evidence 803(6).

"[I]f the dispute at issue concerns either contract formation or whether parties have agreed to submit a particular dispute to arbitration, the court must make an initial determination prior to compelling arbitration." *Morehouse v. PayPal Inc.*, No. 21-CV-4012 (RA), 2022 WL 912966, at *4 (S.D.N.Y. Mar. 28, 2022) (quoting *Velez v. Credit One Bank*, No. 15-cv-4752 (PKC), 2016 WL 324963, at *1 (E.D.N.Y. Jan. 25, 2016)). "In deciding whether a contract was formed, the Court applies New York law, rather than the law provided [in] the [agreement's] choice-of-law clause. *Id.* (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

Defendant has proffered evidence that it is PayPal's standard business practice to present prospective users with an electronic version of the User Agreement and that a prospective user may only create a PayPal account after checking a box indicating that the user has "read and agree[s] to the User Agreement and Privacy Policy." (Mangiameli Decl., ECF No. 4-2 ¶ 6.) The Mangiameli Declaration explains that a prospective user "cannot complete the registration process or create a PayPal account without accepting the User Agreement's terms." (*Id.* ¶ 8.) The User Agreement contains an arbitration provision which expressly states that "all disputes or claims that

7

have arisen or may arise between you and PayPal…shall be resolved exclusively through final and binding arbitration." (Mangiameli Decl., Ex. A, ECF No. 4-3 at 36.)  The User Agreement does, however, allow a prospective user to mail in an opt-out notice if they do not wish to consent to the arbitration provision contained in the User Agreement.  (*Id*. at 37.)  PayPal's records indicate that Plaintiff opened his account on February 17, 2017, that he did not mail in an opt-out notice, and that regularly used his PayPal account until roughly July 2021.  (Mangiameli Decl., ECF No. 4-2 ¶¶ 10, 11, 14.)  Plaintiff even concedes that he accepted the terms of the User Agreement in order to open the account, and even predicates his breach of contract theories on Defendant's alleged breach of the terms of the User Agreement and Acceptable Use Policy.  (Compl. ¶¶ 18–19.)

Plaintiff argues that there was no mutual manifestation of assent to the arbitration provision because the arbitration provision is not conspicuous in the User Agreement.  (Pl.'s Mem., ECF No. 10 at 5–7.)  Plaintiff cites *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123–128 (2d Cir. 2012) for the proposition that "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious…" *Id.* at 30.  However, Plaintiff's reliance on this rule is misplaced.

Contrary to Plaintiff's assertions, the arbitration provision is neither inconspicuous nor buried in the User Agreement's terms.  While the arbitration provision does appear on page 35 of the User Agreement, this does not mean that the provision is somehow obfuscated.  The arbitration provision is clearly marked with the title "Agreement to Arbitrate" and dedicates nearly four pages to clearly and thoroughly outlining the terms of the arbitration agreement.  Additionally, the User Agreement—to which Plaintiff agreed to the terms by checking a box that says "You have also read and agree to the User Agreement…"—is clearly a contractual document.  Plaintiff had the

opportunity to review the User Agreement by clicking on the hyperlink before agreeing to the User Agreement. Plaintiff cannot try to avoid his agreement to arbitrate by stating that he did not read the agreement. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("In the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.") (internal quotation marks and citations omitted); *see also Padro v. Citibank, N.A.*, No. 14-CV-2986 (NGG) LB, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015), ("Parties are charged with knowing and understanding the terms of written agreements to which they assent.")

Next, Plaintiff attacks the sufficiency of the Mangiameli Declaration. Specifically, Plaintiff contends that nothing in the affidavit supports Mangiameli's assertion that she has personal knowledge of the facts, and that the declaration fails to meet the requirements of the business records exception under Federal Rule of Evidence 803(6). These arguments are also unpersuasive.

The Court finds that the Mangiameli Declaration contains sufficient indicia of reliability and that she can authenticate the documents attached as exhibits. Plaintiff's baseless assertion that "nothing in the affidavit…would support the conclusion that Ms. Mangiameli has any personal knowledge of any relevant facts…[so] we must assume that Ms. Mangiameli has no personal knowledge of the relevant events…" is entirely without merit. Mangiameli's Declaration states that she is employed at PayPal as a Legal Specialist. (Mangiameli Decl., ECF No. 4-2 ¶ 2.) She explains that she has "personally reviewed the user records for [Plaintiff]" and that she is "also familiar with the process that prospective PayPal users currently go through to register to use PayPal's services, as well as the process that existed when Plaintiff registered the account." (*Id.*) She also states that she has "personal knowledge of the facts in this declaration and could

9

competently testify to them if [she is] called as a witness." (*Id.* ¶ 1.) *See Purcell v. Navient Sols., LLC*, No. 18-CV-6045 (CS), 2019 WL 188693, at *6 (S.D.N.Y. Jan. 14, 2019).

Plaintiff claims that since Mangiameli is not a custodian of the records, her declaration is insufficient. Plaintiff is incorrect. Mangiameli states that her job duties include accessing and analyzing user account records to confirm information regarding users' account activity. (Mangiameli Decl., ECF No. 4-2 ¶ 2.) Even if she cannot be deemed as the custodian of the records at issue, Federal Rule of Evidence 803(6) does not require the custodian of business records to testify. 803(6)(d) allows the testimony of "the custodian or another qualified witness." Fed. R. Evid. 803(6)(d).

"The phrase 'or another qualified witness' allows proponents to introduce business records through unorthodox foundation witnesses, an important concession to practicality in cases where the most obvious witness, such as the records; custodian, is unwilling or unavailable to testify. All that is required is that the testifying witness be familiar with the organization's record keeping system of which the proffered document is a part." *United States v. Pirk*, 2018 WL 1521781, at *9–*10 (W.D.N.Y March 28, 2018) (internal citations and quotations omitted).

Mangiameli is clearly familiar with the record keeping system of which these documents are a part. She is qualified.

Accordingly, the Court finds that the plain language of the arbitration agreements demonstrates that the parties mutually agreed to the terms of the arbitration provision. *See Purcell*, 2019 WL 188693, at *7.

## II.   Plaintiff's Claims are Subject to the Arbitration Agreement

Next, the Court turns to whether the Plaintiff's claims fall within the scope of the arbitration provision in the User Agreement. Defendant contends that the express written terms of the

arbitration provision encapsulate Plaintiff's Complaint since the agreement specifies that "all disputes" shall be resolved in binding arbitration. (Mangiameli Decl., Ex. A, ECF No. 4-3 at 36.) Plaintiff does not address this point in his opposition to the motion.

"The first step in the Court's analysis is to classify the arbitration provision at issue as either broad or narrow." *Catz v. Precision Glob. Consulting*, No. 19-CV-7499 (ER), 2021 WL 1600097, at *7 (S.D.N.Y. Apr. 23, 2021) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). A broad arbitration provision is considered to raise a presumption of arbitrability. *Id.* at *8.

The arbitration provision here is clearly broad since the provision states that "all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration." (Mangiameli Decl., Ex. A, ECF No. 4-3 at 36.) The Complaint alleges eight common law and statute statutory counts of breach of contract, breach of the implied covenant of good faith and fair dealing, trespass to personal property, unjust enrichment, deceptive business practices, negligence, and declaratory judgment, based on PayPal's alleged wrongful closure of Plaintiff's PayPal account and its retention of the funds in that account. (*See generally* Compl.) These claims are clearly encompassed by the arbitration provision in the User Agreement. Accordingly, the Court finds that Plaintiff's claims clearly fall within the scope of the arbitration provision contained in the User Agreement and are thus arbitrable. *See Catz*, 2021 WL 1600097, at *8.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to compel arbitration. The case is hereby **DISMISSED** without prejudice. *See Benzemann v. Citibank, N.A.*, 622 F.

App'x 16, 18 (2d Cir. 2015) (summary order) (concluding that outright dismissal, as opposed to stay, is appropriate where none of the parties had requested a stay), *cert. denied*, ⸺ U.S. ⸺, 137 S. Ct. 618, 196 L.Ed.2d 514 (2017).  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 4 and close this case.

**SO ORDERED.**

**Dated: March 27, 2023**
**New York, New York**

*/s/ Andrew L. Carter, Jr.*
_____
**ANDREW L. CARTER, JR.**
**United States District Judge**